# UNITED STATES DISTRICT COURT
# WESTERN DISTRICT OF WASHINGTON
# AT SEATTLE

JOHN S. BOWER,

    Plaintiff,

v.

MICHAEL J. ASTRUE, Commissioner of Social Security,

    Defendant.

NO. C11-5128-RSM-JPD

REPORT AND RECOMMENDATION

Plaintiff John S. Bower appeals the final decision of the Commissioner of the Social Security Administration ("Commissioner") which denied his applications for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI") under Titles II and XVI of the Social Security Act, 42 U.S.C. §§ 401-33 and 1381-83f, after a hearing before an administrative law judge ("ALJ"). For the reasons set forth below, the Court recommends that the Commissioner's decision be AFFIRMED and the case be DISMISSED with prejudice.

## I. FACTS AND PROCEDURAL HISTORY

Plaintiff was born in 1956. Administrative Record ("AR") 25. He has a high school education. AR 143, 583. His past work experience includes employment as a carpenter, construction worker, and dry cleaner helper. AR at 618. Plaintiff was last gainfully employed on July 31, 2004. AR 139.

REPORT AND RECOMMENDATION - 1

1         On October 5, 2005, plaintiff filed applications for DIB and SSI payments, alleging an onset date of April 5, 2004. AR 15, 72-74. He asserts that he is disabled due to degenerative disc disease, coronary artery disease, and chronic obstructive pulmonary disease. AR 19.

        The Commissioner denied plaintiff's claim initially and on reconsideration. AR 37-38, 42-45. Plaintiff requested a hearing which took place on April 23, 2008. AR 577-627. On September 29, 2008, the ALJ issued a partially favorable decision finding that plaintiff was disabled from April 4, 2004 to July 31, 2006, but that his condition medically improved and his disability ended on July 31, 2006. AR 15-27. Plaintiff's administrative appeal of the ALJ's decision was denied by the Appeals Council, AR 4-6, making the ALJ's ruling the "final decision" of the Commissioner as that term is defined by 42 U.S.C. § 405(g). On February 14, 2011, plaintiff timely filed the present action challenging the Commissioner's decision. Dkt. 1.

## II.     JURISDICTION

Jurisdiction to review the Commissioner's decision exists pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3).

## III.     STANDARD OF REVIEW

Pursuant to 42 U.S.C. § 405(g), this Court may set aside the Commissioner's denial of social security benefits when the ALJ's findings are based on legal error or not supported by substantial evidence in the record as a whole. *Bayliss v. Barnhart*, 427 F.3d 1211, 1214 (9th Cir. 2005). "Substantial evidence" is more than a scintilla, less than a preponderance, and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Richardson v. Perales*, 402 U.S. 389, 201 (1971); *Magallanes v. Bowen*, 881 F.2d 747, 750 (9th Cir. 1989). The ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and resolving any other ambiguities that might exist. *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995). While the Court is required to examine the record as a whole, it may

REPORT AND RECOMMENDATION - 2

neither reweigh the evidence nor substitute its judgment for that of the Commissioner. *Thomas v. Barnhart*, 278 F.3d 947, 954 (9th Cir. 2002). When the evidence is susceptible to more than one rational interpretation, it is the Commissioner's conclusion that must be upheld. *Id.*

The Court may direct an award of benefits where "the record has been fully developed and further administrative proceedings would serve no useful purpose." *McCartey v. Massanari*, 298 F.3d 1072, 1076 (9th Cir. 2002) (citing *Smolen v. Chater*, 80 F.3d 1273, 1292 (9th Cir. 1996)). The Court may find that this occurs when:

> (1) the ALJ has failed to provide legally sufficient reasons for rejecting the claimant's evidence; (2) there are no outstanding issues that must be resolved before a determination of disability can be made; and (3) it is clear from the record that the ALJ would be required to find the claimant disabled if he considered the claimant's evidence.

*Id*. at 1076-77; *see also Harman v. Apfel*, 211 F.3d 1172, 1178 (9th Cir. 2000) (noting that erroneously rejected evidence may be credited when all three elements are met).

## IV. EVALUATING DISABILITY

As the claimant, Mr. Bower bears the burden of proving that he is disabled within the meaning of the Social Security Act (the "Act"). *Meanel v. Apfel*, 172 F.3d 1111, 1113 (9th Cir. 1999). The Act defines disability as the "inability to engage in any substantial gainful activity" due to a physical or mental impairment which has lasted, or is expected to last, for a continuous period of not less than twelve months. 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A). A claimant is disabled under the Act only if his impairments are of such severity that he is unable to do his previous work, and cannot, considering his age, education, and work experience, engage in any other substantial gainful activity existing in the national economy. 42 U.S.C. §§ 423(d)(2)(A); *see also Tackett v. Apfel*, 180 F.3d 1094, 1098-99 (9th Cir. 1999).

The Commissioner has established a five step sequential evaluation process for determining whether a claimant is disabled within the meaning of the Act. *See* 20 C.F.R. §§

REPORT AND RECOMMENDATION - 3

404.1520, 416.920. The claimant bears the burden of proof during steps one through four. At step five, the burden shifts to the Commissioner. *Id.* If a claimant is found to be disabled at any step in the sequence, the inquiry ends without the need to consider subsequent steps.

Step one asks whether the claimant is presently engaged in "substantial gainful activity." 20 C.F.R. §§ 404.1520(b), 416.920(b).[1] If he is, disability benefits are denied. If he is not, the Commissioner proceeds to step two. At step two, the claimant must establish that he has one or more medically severe impairments, or combination of impairments, that limit his physical or mental ability to do basic work activities. If the claimant does not have such impairments, he is not disabled. 20 C.F.R. §§ 404.1520(c), 416.920(c). If the claimant does have a severe impairment, the Commissioner moves to step three to determine whether the impairment meets or equals any of the listed impairments described in the regulations. 20 C.F.R. §§ 404.1520(d), 416.920(d). A claimant whose impairment meets or equals one of the listings for the required twelve-month duration requirement is disabled. *Id.*

When the claimant's impairment neither meets nor equals one of the impairments listed in the regulations, the Commissioner must proceed to step four and evaluate the claimant's residual functional capacity ("RFC"). 20 C.F.R. §§ 404.1520(e), 416.920(e). Here, the Commissioner evaluates the physical and mental demands of the claimant's past relevant work to determine whether he can still perform that work. 20 C.F.R. §§ 404.1520(f), 416.920(f). If the claimant is able to perform his past relevant work, he is not disabled; if the opposite is true, then the burden shifts to the Commissioner at step five to show that the claimant can perform other work that exists in significant numbers in the national economy, taking into consideration the

---

[1] Substantial gainful activity is work activity that is both substantial, i.e., involves significant physical and/or mental activities, and gainful, i.e., performed for profit. 20 C.F.R. § 404.1572.

claimant's RFC, age, education, and work experience. 20 C.F.R. §§ 404.1520(g), 416.920(g); *Tackett*, 180 F.3d at 1099-1100. If the Commissioner finds the claimant is unable to perform other work, then the claimant is found disabled and benefits may be awarded.

If the claimant is found disabled at any point in the sequential evaluation process, the Commissioner must also determine whether his disability continued through the date of the decision. In making this determination, the ALJ must follow an eight-step evaluation process for Title II claims and a seven-step process for Title XVI claims. 20 C.F.R. §§ 404.1594, 416.994. The continuing disability evaluation process is similar to the five-step sequential evaluation process, with additional questioning on whether medical improvement has occurred. *Compare* 20 C.F.R. §§ 404.1520, *and* 416.920, *with* 20 C.F.R. §§ 404.1594, *and* 416.994.

## V. DECISION BELOW

On September 29, 2008, the ALJ issued a decision finding the following:

1. The claimant met the insured status requirements of the Social Security Act as of April 5, 2004, the date the claimant became disabled.

2. The claimant has not engaged in substantial gainful activity since April 5, 2004, the alleged onset date.

3. At all times relevant to this decision, the claimant has had the following severe impairments: degenerative disc disease, coronary artery disease, and chronic obstructive pulmonary disease.

4. From April 5, 2004 through July 31, 2006, the period during which the claimant was disabled, the severity of the claimant's degenerative disc disease met the criteria of sections(s) 1.04 (A) of 20 CFR Part 404, Subpart P, Appendix 1.

5. The claimant was under a disability, as defined by the Social Security Act, from April 5, 2004 through July 31, 2006.

6. Medical improvement occurred as of July 31, 2006, the date the claimant's disability ended.

7. Beginning on July 31, 2006, the claimant has not had an impairment or combination of impairments that meets or medically equals one of the impairments listed in 20 CFR Part 404, Subpart P, Appendix 1.

REPORT AND RECOMMENDATION - 5

8. The medical improvement that has occurred is related to the ability to work because the claimant no longer has an impairment or combination of impairments that meets or medically equals a listing.

9. After careful consideration of the entire record, the undersigned finds that, beginning on July 31, 2006, the claimant has had the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) and 416.967(b) with the additional restrictions that have been detailed in this decision.

10. Beginning on July 31, 2006, the claimant has been unable to perform past relevant work.

11. The claimant was born on XXXX,[2] 1956 and was 49 years old, which is defined as a younger individual age 18-49, on July 31, 2006, the date disability ended.

12. The claimant has at least a high school education and is able to communicate in English.

13. Beginning on July 31, 2006, transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that the claimant is "not disabled," whether or not the claimant has transferable job skills.

14. Beginning on July 31, 2006, considering the claimant's age, education, work experience, and residual functional capacity, the claimant has been able to perform a significant number of jobs in the national economy.

15. The claimant's disability ended on July 31, 2006.

AR at 19-27.

## VI. ISSUES ON APPEAL

The principal issues on appeal are:

1. Did the ALJ properly determine that medical improvement occurred as of July 31, 2006?

2. Did the ALJ properly weigh the opinion of treating physician Chad Krilich, M.D.?

---

[2] Plaintiff's date of birth is redacted back to the year of birth in accordance with Federal Rule of Civil Procedure 5.2(a) and the General Order of the Court regarding Public Access to Electronic Case Files.

REPORT AND RECOMMENDATION - 6

3. Did the ALJ err by failing to find plaintiff disabled after July 31, 2006, pursuant to Medical-Vocational Rule 201.14?

4. Did the ALJ properly determine that plaintiff could perform the occupations of cleaner/housekeeper and production assembler?

Dkt. No. 14 at 1-2.

## VII. DISCUSSION

A. <u>Substantial evidence supports the ALJ's conclusion that "medical improvement" occurred as of July 31, 2006</u>.

Although a claimant for Social Security disability benefits bears the burden of proving disability, once he or she "has been found to be disabled, however, a presumption of continuing disability arises in [his or] her favor." *Bellamy v. Sec'y of Health & Human Servs*., 755 F.2d 1380, 1381 (9th Cir. 1985) (citing *Murray v. Heckler*, 722 F.2d 499, 500 (9th Cir. 1983)); *see also McCalmon v. Astrue*, 319 Fed. Appx. 658, 2009 WL 725928, *1* (9th Cir. 2009). Furthermore, the Commissioner "bears the burden of producing evidence sufficient to rebut this presumption of continuing disability." *Id*. The Commissioner may rebut the presumption of continuing disability with substantial evidence that demonstrates that there has been "medical improvement" in the claimant's condition that is related to the claimant's ability to do work. *See* 42 U.S.C. § 423(f); 20 C.F.R. §§ 404.1594(a), 416.994(b).

In the present case, the ALJ determined that plaintiff's degenerative disc disease met medical Listing 1.04(A)[3] from April 5, 2004 to July 31, 2006. AR 21. However, the ALJ found that by July 31, 2006, plaintiff no longer met the medical listings based on the testimony from

---

[3] To meet Listing 1.04(A), the impairment must manifest the following symptoms:

Evidence of nerve root compression characterized by neuro-anatomic distribution of pain, limitation of motion of the spine, motor loss (atrophy with associated muscle weakness or muscle weakness) accompanied by sensory or reflex loss and, if there is involvement of the lower back, positive straight-leg raising test (sitting or supine).

20 C.F.R. Pt. 404, Subpt. P, App. 1, § 1.04(A).

the medical expert, Arthur Lorber, M.D. *Id*. In addition, the ALJ found that "medical improvement had begun to be visible in the months preceding July 31, 2006," noting that plaintiff had reported that "the intensity of his leg pain had gone down," "his laminectomy with bilateral foraminotomies had been quite beneficial," "he walked 2 ½ miles with multiple breaks," "his legs were getting stronger and that his endurance was improving," "he was walking as far as he had earlier, but he did not experience any recurrence of break-through pain," and "his low back pain was continuing to feel good." AR 21, 297-99, 327. The ALJ also noted that in October 2006 "straight leg raising was negative and [plaintiff's] motor and sensory examinations were normal," and in November 2007 an "electrodiagnostic study was normal with no evidence of left upper or lower extremity radiculopathy, plexopathy, or peripheral neuropathy." AR 21, 163, 166. The ALJ also considered a June 2008 MRI submitted by plaintiff after the hearing but before the ALJ issued her September 29, 2008 decision. AR 21, 523. The ALJ noted the MRI "showed multilevel spondylosis and facet arthropathy that was most severe at L5-S1 where there was a moderate to severe left-sided foraminal narrowing and possible encroachment upon the existing left L5 nerve root." *Id*. The ALJ found the MRI showed "no granulation tissue of residual/recurrent disc herniation associated with the laminectomy," and that the "existence of spondylosis did not prevent the previously discussed improvement as noted by medical studies and as noted by the [plaintiff's] own statements." AR 21. The ALJ concluded this evidence "failed to show that medical improvement did not exist." *Id*.

Plaintiff argues the ALJ erred in finding that he experienced medical improvement as of July 31, 2006. Dkt. 14 at 10-14. He contends that "[a]lthough the ALJ cited some signs and laboratory findings after [plaintiff's] surgery, she failed to demonstrate that there had been improvement in these signs and laboratory findings when compared to these same signs and laboratory findings prior to [plaintiff's] surgery." Dkt. 14 at 11. The Commissioner responds

REPORT AND RECOMMENDATION - 8

that the ALJ properly weighed the medical evidence and that plaintiff's alternate interpretation is insufficient to overturn the ALJ's decision. Dkt. 16 at 8-10. The Court agrees with the Commissioner.

"Medical improvement" is defined as any decrease in the medical severity of an impairment that was present at the time the claimant was found disabled or continued to be disabled. 20 C.F.R. §§ 404.1594(b)(1), 416.994(b)(1)(i). "A determination that there has been a decrease in medical severity must be based on changes (improvement) in the symptoms, signs and/or laboratory findings associated with [the] impairment(s)." *Id*. In determining whether medical improvement has occurred, the Commissioner must compare the severity of the claimant's current impairment to the severity of the impairment when the claimant was most recently found to be disabled. 20 C.F.R. §§ 404.1594(b)(7), 416.994(b)(1)(i).

Here, the ALJ initially found that plaintiff's degenerative disc disease met Listing 1.04(A) from April 5, 2004 to July 31, 2006, based on Dr. Lorber's opinion and the medical evidence. AR 20-21. As Dr. Lorber testified, an MRI conducted on November 3, 2004, revealed a disc protrusion at the L4-L5 level, and a disc protrusion at the L5-S1 level that displaced the right S1 nerve root. AR 19, 293, 608. In addition, Dr. Lorber noted that, on December 3, 2004, plaintiff's treating neurologist D. Thomas Rogers, M.D., found a slight weakness in the muscles of plaintiff's left foot, and some sensitivity in his left foot. AR 19, 495, 608. On April 13, 2006, plaintiff underwent a laminectomy to relieve his chronic back pain and left leg radiculopathy. AR 360. The ALJ determined plaintiff met Listing 1.04(A) due to demonstrated nerve root compression, muscle weakness, and sensory loss. 20 C.F.R. Pt. 404, Subpt. P, App 1, § 1.04(A).

Following plaintiff's surgery, however, Dr. Lorber found plaintiff's "[s]traight leg raising was negative and motor and sensory examinations were normal." AR 21, 163, 608. Likewise, a November 2007 electrodiagnostic study was normal with no evidence of left upper or lower

REPORT AND RECOMMENDATION - 9

radiculopathy, plexopathy, or peripheral neuropathy. AR 21, 166, 357, 608-09. While plaintiff exhibited signs, symptoms, and laboratory findings of disc herniation, radiculopathy, muscle weakness, and hypersensitivity before surgery, he exhibited no such signs, symptoms, or laboratory findings after surgery. Dr. Lorber thus properly concluded that plaintiff no longer met the criteria for Listing 1.04(A).

Plaintiff argues that while the ALJ indicated that his straight leg raising was negative and his motor and sensory examinations were normal after surgery, treating orthopedist Jos A. Cové, M.D., indicated that plaintiff's straight leg raising was negative and his motor testing was normal before surgery. AR 339. And, while the ALJ indicated that plaintiff's electrodiagnostic study was normal after surgery, Dr. Cové indicated that his electrodiagnostic study was normal before surgery. AR 159. While some signs may have been absent both before and after surgery, the ALJ properly found signs, symptoms, and laboratory findings that met Listing 1.04(A) before surgery, and no evidence that plaintiff met the criteria for Listing 1.04(A) after surgery.

In addition, the ALJ found plaintiff's self reports indicated improvement following his surgery: "the intensity of his leg pain had gone down," "his laminectomy with bilateral foraminotomies had been quite beneficial," "he walked 2 ½ miles with multiple breaks," "his legs were getting stronger and that his endurance was improving," "he was walking as far as he had earlier, but he did not experience any recurrence of break-through pain," and "his low back pain was continuing to feel good." AR 21, 297-99, 327. Plaintiff argues that although he initially reported that his symptoms had improved, he subsequently reported his symptoms had recurred. Dkt. 14 at 13. However, the ALJ found plaintiff's statements regarding his limitations were not fully credible, and plaintiff did not challenge the ALJ's adverse credibility determination in this case. AR 23.

1    Plaintiff also argues that Dr. Lorber's testimony was not supported by substantial
2    evidence. Plaintiff points out that in finding that he met Listing 1.04(A) before surgery, Dr.
3    Lorber relied on the November 2004 MRI which showed a disc protrusion that slightly displaced
4    the nerve root. AR 518, 608, 612. However, plaintiff contends that Dr. Lorber testified that
5    there were "no post-operative imaging study of high caliber," and that the closed period date was
6    simply based on the fact that three months had elapsed since his surgery. AR 610-11. Thus,
7    plaintiff contends that there was no basis for the medical expert's opinion that plaintiff no longer
8    met Listing 1.04(A) as of July 31, 2006. Plaintiff further contends that the June 2008 MRI that
9    was not available to Dr. Lorber shows that he still has an underlying condition that meets Listing
10   1.04(A).

11   Contrary to plaintiff's contention, Dr. Lorber found plaintiff did not meet Listing 1.04(A)
12   because "there [were] no objective clinical findings of focal neurologic deficient subsequent to
13   the surgical procedure." AR 610. Rather, the medical evidence showed that by July 31, 2006,
14   plaintiff was neurologically intact, had no lumbar radiculopathy, no peripheral neuropathy, no
15   muscle weakness, and no hypersensitivity. AR 608-09. In addition, Dr. Lorber found that
16   plaintiff's treating physicians opined that plaintiff was not a candidate for further surgery, and
17   discharged him from care. AR 608-09. Dr. Lorber found this indicates that his surgeons
18   believed there was no surgical pathology present. AR 611. Although Dr. Lorber did not have
19   the benefit of the 2008 MRI submitted after the hearing, the 2008 MRI showed no evidence of
20   nerve root impingement as indicated by the 2004 MRI. AR 518, 523. Furthermore, even if the
21   2008 MRI showed nerve root impingement, plaintiff would still not meet Listing 1.04(A) due to
22   the lack of documentation of the other criteria for the listing. *See* 20 C.F.R. Pt. 404, Subpt. P,
23   App. 1, § 1.04(A). Thus, substantial evidence supports Dr. Lorber's opinion that plaintiff no

longer met the listing as of July 31, 2006, based on the medical records from plaintiff's treating physicians and due to the lack of documentation of the criteria for the listing.

The role of this Court is limited. The ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and resolving any other ambiguities that might exist. *Edlund v. Massanari*, 253 F.3d 1152, 1156 (9th Cir. 2001). While it is perhaps possible to construe the medical evidence as urged by the plaintiff, it is not possible to conclude that plaintiff's interpretation is the only rational interpretation. Substantial evidence in the record supports the ALJ's finding of medical improvement as of July 31, 2006.

### B. The ALJ provided specific and legitimate reasons for rejecting the opinion of plaintiff's treating physician Chad Krilich, M.D.

As a matter of law, more weight is given to a treating physician's opinion than to that of a non-treating physician because a treating physician "is employed to cure and has a greater opportunity to know and observe the patient as an individual." *Magallanes*, 881 F.2d at 751; 20 C.F.R. § 404.1527(d)(1)-(2). "Likewise, greater weight is accorded to the opinion of an examining physician than a non examining physician." *Andrews*, 53 F.3d at 1041. However, under certain circumstances, a treating or examining physician's opinion can be rejected, whether or not that opinion is contradicted by other medical evidence of record. *Magallanes*, 881 F.2d at 751. The ALJ must give clear and convincing reasons for rejecting a treating or examining physician's opinion if that opinion is not contradicted by other evidence, and specific and legitimate reasons if it is. *Reddick v. Chater*, 157 F.3d 715, 725 (9th Cir. 1998). "This can be done by setting out a detailed and thorough summary of the facts and conflicting clinical evidence, stating [her] interpretation thereof, and making findings." *Id*. (citing *Magallanes*, 881 F.2d at 751). The ALJ must do more than merely state her conclusions. "[She] must set forth [her] own interpretations and explain why they, rather than the doctors', are correct." *Id*. (citing

REPORT AND RECOMMENDATION - 12

*Embrey v. Bowen*, 849 F.2d 418, 421-22 (9th Cir. 1988)). Such conclusions must at all times be supported by substantial evidence. *Id*.

Chad Krilich, M.D., was plaintiff's primary care provider beginning in May 2005. Dkt. 14 at 6, AR 450. Dr. Krilich completed physical evaluations for the Department of Social and Health Services ("DSHS") in April 2006, October 2006, and August 2007. AR 195-98, 199-202, 310-13. Dr. Krilich opined that plaintiff was limited to sedentary work due to his degenerative disc disease, noting that plaintiff "ha[d] failed [physical therapy] and surgery for treatment of this condition." AR 108, 201, 312. However, when asked to describe any signs or proof of limitations, Dr. Krilich simply wrote, "See Dr. Cové's note." AR 106, 200, 311.

The ALJ determined that Dr. Krilich's opinions did not merit much weight because "[t]here [were] few and very minimal references to any objective medical findings and these do not provide a foundation for concluding that only sedentary exertion could be performed." AR 24-25. For example, the ALJ noted "Dr. Krilich check marked answers that indicated restrictions but failed to cite any objective medical findings in support of these restrictions." AR 25. Instead, the ALJ preferred the contrary opinions of the medical expert Dr. Lorber, and the state Agency physicians Robert Hoskins, M.D., and Sashi Mathur, M.D., who all concluded that plaintiff was capable of performing light work with additional physical and environmental restrictions. AR 22, 224-33, 243-50, 607-17.

Plaintiff argues that the ALJ's rationale for rejecting Dr. Krilich's opinions was not legitimate. Dkt. 14 at 15. He contends that Dr. Krilich cited to the treatment notes from plaintiff's orthopedic surgeon, Dr. Cové, which indicate that he kept Dr. Krilich apprised of plaintiff's condition. *Id*. The Commissioner responds that the ALJ properly discredited Dr. Krilich's opinion because he provided no explanation and no support for his conclusion that

plaintiff was limited to sedentary work. Dkt. 16 at 11-12. The Court agrees with the Commissioner.

The ALJ may "discredit treating physicians' opinions that are conclusory, brief, and unsupported by the record as a whole . . . or by objective medical findings." *Batson v. Comm'r of Soc. Sec. Admin.*, 359 F.3d 1190, 1195 (9th Cir. 2004); *see also Thomas*, 278 F.3d at 957 ("The ALJ need not accept the opinion of any physician, including a treating physician, if that opinion is brief, conclusory, and inadequately supported by clinical findings."). As the ALJ found, Dr. Krilich provided no explanation for his conclusion that plaintiff was limited to sedentary work. Dr. Krilich's reference to Dr. Cové's treatment notes does not provide sufficient substantive basis or objective findings to support his opinion. Furthermore, the ALJ properly relied on the contrary opinions of Drs. Lorber, Hoskins, Mathur, who concluded based on the entire record, including the objective medical evidence, that plaintiff was capable of performing light work with additional physical and environmental restrictions.

"The ALJ is responsible for resolving conflicts in the medical record." *Carmickle v. Comm'r of SSA*, 533 F.3d 1155, 1164 (9th Cir. 2008) (citing *Benton v. Barnhart*, 331 F.3d 1030, 1040 (9th Cir. 2003)). *Accord Thomas*, 278 F.3d at 956-57 ("'When there is conflicting medical evidence, the Secretary must determine credibility and resolve the conflict.'") (quoting *Matney v. Sullivan*, 981 F.2d 1016, 1019 (9th Cir. 1992)). Although an ALJ generally gives more weight to a treating doctor's opinion than to non-examining doctors' opinions, non-examining doctors' opinions may nonetheless constitute substantial evidence if they are consistent with other evidence in the record. *Thomas*, 278 F.3d at 957. The ALJ's interpretation of the conflicting medical evidence is supported by substantial evidence. The ALJ did not err in his treatment of Dr. Krilich's opinion.

C. <u>The ALJ did not err by failing to find plaintiff disabled under Medical-Vocational Rule 201.14</u>.

Plaintiff also argues that the ALJ erred by failing to find him disabled under Rule 201.14 of the Medical-Vocational Guidelines ("Guidelines") because he was 2 ½ months away from turning 50 on July 31, 2006, and thus from becoming a person closely approaching advanced age. Dkt. 14 at 17. 20 C.F.R. Pt. 404, Subpt. P, App. 2, Rule 201.14. The Court disagrees.

The regulations divide social security disability claimant's into three age categories. A person under age 50 is "[y]ounger person," a person age 50 to 54 is a "[p]erson closely approaching advanced age," and a person age 55 or older is a "[p]erson of advanced age." 20 C.F.R. §§ 404.1563(c)-(e), 416.963(c)-(e). "Where a claimant is within a few days or a few months of reaching an older age category (a 'borderline situation'), an ALJ has discretion, but is not required, to use the older age category." *Lockwood v. Comm'r Soc. Sec. Admin.*, 616 F.3d 1068, 1069 (9th Cir. 2010) (citing 20 C.F.R. § 404.1563(b)); *see also* 20 C.F.R. § 416.963(b).

Here, the ALJ satisfied the requirement that she "*consider* whether to use the older age category" because she mentioned in her decision plaintiff's date of birth and found plaintiff was 49 years old on July 31, 2006. *Lockwood*, 616 F.3d at 1071-72. Plainly the ALJ was aware that plaintiff was 2 ½ months shy of his 50th birthday because she mentioned it in her decision and cited to 20 C.F.R. §§ 404.1563 and 416.963. *Id*. at 1072. Nothing more is required. As the Ninth Circuit found in *Lockwood*, "'the regulation[s] merely promise[] claimants that the [Social Security] Administration will 'consider' veering from the chronological-age default in borderline situations.'" *Id*. at 1074. Thus, the ALJ did not err by failing to find plaintiff disabled under Rule 201.14.

1  **D.  The ALJ's error does not require remand**.

Plaintiff argues that the jobs identified by the vocational expert ("VE") are inconsistent with his assessed physical limitations. Dkt. 14 at 17-18. Notably, plaintiff's RFC "precluded . . . kneeling or stooping," AR 22, whereas the jobs specified by the VE – cleaner/housekeeper and production assembler – require occasional stooping and/or kneeling. DOT 323.687-014, 1991 WL 672783; DOT 706.687-010. A hypothetical posed to a VE must include all of the claimant's functional limitations supported by the record. *Thomas*, 278 F.3d at 956 (citing *Flores v. Shalala*, 49 F.3d 562, 520-71 (9th Cir. 1995)).

The Commissioner responds that the ALJ appears to have misstated Dr. Lorber's RFC determination, which cited a preclusion on "crawling" rather than a preclusion on "stooping." Dkt. 16 at 16. As the Commissioner points out, the ALJ determined that plaintiff "had a limitation to bending, crouching, and stooping to an occasional basis." AR 22. In the next sentence, the ALJ also determined that plaintiff was "precluded from . . . kneeling or stooping." *Id*. The ALJ cited Dr. Lorber's assessment of plaintiff's limitations. AR 22. However, Dr. Lorber testified that plaintiff could perform light work, but should "limit his bending and stooping and crouching to only occasional. . . . No kneeling or crawling." AR 609.

The Court agrees with the Commissioner that the ALJ slightly misstated Dr. Lorber's RFC assessment. AR 22, 609. The undersigned sees no reason to believe that this was a factual finding and not simply an unintentional clerical error. The ALJ stated several times in her opinion that plaintiff was limited to light work and purportedly adopted the limitations assessed by Dr. Lorber in the RFC. AR 22, 24-25, 26.

The ALJ found that plaintiff's disability ended on April 1, 2006, because he was capable of performing two light level jobs – cleaner/housekeeper, and production assembler. AR 621. According to the DOT, cleaner/housekeeper requires occasional stooping and kneeling, and

REPORT AND RECOMMENDATION - 16

production assembler requires occasional stooping. DOT 323.687-014, 1991 WL 672783; DOT 706.687-010. Plaintiff argues that the ALJ erred in finding he was capable of performing these two jobs. The VE also identified three sedentary level jobs that plaintiff could perform – order clerk, assembler, and charge account clerk. AR 26, 622.

The undersigned agrees that the ALJ's preclusion on kneeling is inconsistent with the job of cleaner/housekeeper which requires occasional kneeling. Nevertheless, the ALJ identified one other light level job and three other sedentary level jobs which are not precluded by the ALJ's limitations. As the ALJ need only identify *one* or more jobs that exist in significant numbers in the national economy that plaintiff could perform, any error was harmless. *See* 20 C.F.R. § 404.1566(b) ("Work exists in the national economy when there is a significant number of jobs (in one or more occupations) having requirements which you are able to meet with your physical or mental abilities and vocational qualifications.").[4]

## VIII. CONCLUSION

For the foregoing reasons, the Court recommends that the Commissioner's decision be AFFIRMED and the case be DISMISSED with prejudice. A proposed order accompanies this Report and Recommendation.

DATED this 3rd day of October, 2011.

*James P. Donohue*

JAMES P. DONOHUE
United States Magistrate Judge

---

[4] Plaintiff also argues it was improper for the ALJ to rely on sedentary jobs as a basis for denial since he would have been disabled under the Guidelines. However, as indicated above, the ALJ was "not *required* to use an older age category, even if plaintiff is within a few days or a few months of reaching an older age category." *Lockwood*, 616 F.3d at 1071. The ALJ did not err by using sedentary jobs as a basis for finding plaintiff able to work and not disabled.

REPORT AND RECOMMENDATION - 17